382

**ROBINSON et al. v. DEAL et al.**
No. 8596.

United States Court of Appeals
District of Columbia.

Argued May 11, 1944.

Decided Oct. 23, 1944.

Writ of Certiorari Denied Feb. 26, 1945.
See 65 S.Ct. 686.

Mr. Scott P. Crampton, of Washington, D. C., with whom Mr. George E. H. Goodner, of Washington, D. C., was on the brief, for appellants.

Mr. John E. Garvey, Special Assistant to the Attorney General, pro hac vice, by special leave of court, with whom Assistant Attorney General, Samuel O. Clark, Jr., and Miss Helen R. Carloss and Mr. Sewall Key, Special Assistants to the Attorney General, and Mr. Edward M. Curran, United States Attorney, of Washington, D. C., were on the brief, for appellees.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

PER CURIAM.

This case was first here in 1936 on appeal from a decree of the District Court dismissing the bill. · The then plaintiffs, on behalf of themselves and other cotton producers similarly situated, had sued Deal, the manager· of the National Cotton Pool, Wallace, Secretary of Agriculture, Julian, Treasurer of the United States, and Payne and Davis, Comptroller and Administrator, respectively, of AAA. They alleged that during the crop year 1935-36 they had received, under the provisions of the Bankhead Cotton Act, 7 U.S.C.A. § 701 et seq., their respective allotments of tax exempt cotton production certificates, but had produced more cotton than their allotted quotas. Under the provisions of the Act four courses were open to them through which to market the cotton produced by them above the allotment.

1. They could pay the tax of $25 a bale;

2. They could obtain reissue certificates (pool certificates) at $20 a bale;

3. They could store their cotton subject to a Government lien, but not to be thereafter removed without payment of the tax or the purchase of exemption certificates; or

4. They could ignore the Act and be subject to the criminal penalties prescribed therein.

They chose the least burdensome of the alternatives and purchased from appellee (defendant) Deal, manager of the pool, sufficient reissue (pool) certificates to cover the marketing of their excess cotton and were led to do this because the Secretary had fixed the price of the certificates at one cent less per pound ($5 less per bale) than the tax. They said the Act was unconstitutional and that they made the payments under duress and that the money received by Deal from the sale of the certificates, less the deduction of the expenses of the pool, was about to be distributed under the direction of the Secretary of Agriculture to persons who, having raised less cotton than their allotments, had, in accordance with the regulations, surrendered for sale their surplus certificates to the pool. They based their suit upon the invalidity of the Act and of the rules and regulations of the Secretary of Agriculture, and alleged that if the pool money "now in the hands of the defendants" was paid out as proposed, it would be impossible to trace the fund and that suit for recovery against the United States would not lie because the money was not paid to a Collector of Internal Revenue.

They asked the appointment of a receiver to hold the fund and upon a final hearing that they and those for whom the suit was prosecuted be declared to be the owners of the fund and entitled to receive the amounts which they had severally paid into it.

Defendants moved to dismiss the bill upon the principal ground that the depositors in the pool were the real beneficiaries of the fund under the trust agreement and were indispensable parties in any determination of ownership.

The District Court refused the appointment of a receiver or an injunction and ordered the bill dismissed upon the ground that the certificate depositors whose surplus certificates had been purchased were the real parties in interest; that no duress had been exercised and that plaintiffs had an adequate remedy at law against these depositors.

We reversed and in our opinion said:[1] "Contrary to our previous experience in suits against the Treasurer and other fiscal officers of the United States in which it is almost invariably insisted that the suit is one against the United States, we are met in this case with the flat-footed statement by the officers sued that this is not a suit against the United States," and that the United States has no interest in this fund except as custodian.

Considered in this view we held that the suit was properly a class suit, that the purchase of pool certificates was made under duress of the statute and that the fund then being, as appeared from the pleadings and admissions, under the exclusive control of defendants as individuals, who were about to distribute it to persons having no valid claim to it, the suit was properly maintainable. In 1940 Wallace resigned as Secretary of Agriculture. Davis and Payne had previously resigned. No substitutions were ever had. Apparently, also, no further proceedings in the suit were had until the latter part of 1941, when the original plaintiffs filed in the trial court a motion to dismiss without prejudice.[2] Present plaintiffs appeared, successfully opposed that motion and, after hearing, were permitted to intervene and file a new complaint. This they did, adopting substantially the allegations of the original complaint. Since then the case has been tried and heard on the merits, and judgment of dismissal entered on the ground that the suit is brought to impress a trust on a fund in the Treasury, that the United States has not consented to be sued, that there is no Congressional authority for the withdrawal of the money, and accordingly the Court

---

[1] Thompson v. Deal, 67 App.D.C. 327, 92 F.2d 478, 481.

[2] It is only fair to intervenors to say that the record shows, without contradiction, that the request of original plaintiffs for dismissal of the case was brought about solely by coercion and threats on the part of officials of the Department of Agriculture. Since no action in respect thereto was asked or taken in the court below, it is perhaps not for us to characterize such conduct on the part of Government officers as we should otherwise be disposed to do. And we mention it only that it may be understood that the surrender of the original plaintiffs has in no way influenced our judgment of intervenors' case on the merits.

is without jurisdiction to entertain the suit.

■ The facts found by the District Court, which we think the evidence sustains, show that neither at the time of the commencement of plaintiffs' suit nor at the time of the trial involved in this appeal was there any fund arising out of the transactions we have referred to in the possession of or under the control of the defendants as individuals, but that all moneys' received in connection with the operation of the pool had gone into the possession of and under the control of the United States before the institution of plaintiffs' suit and had been duly covered into the Treasury of the United States, commingled with the funds of the United States and, though earmarked with a symbol number, were subject to withdrawal only by Act of Congress. In these circumstances the presumption which we indulged on the previous appeal can no longer be sustained. In this aspect the situation is like that which we encountered in the case of Cummings v. Hardee, 70 App.D.C. 18, 21, 102 F.2d 622, 625, where we said:

"But it should be observed that our former decision was based upon the facts appearing in the bill of complaint in that suit, and these facts showed that the fund being sued for—the proceeds of the pledge—was then a fund exclusively under the control of the Attorney General; that it was not money of the United States; was held by the Attorney General; and had not been covered into the Treasury of the United States and commingled with the moneys of the United States. The contrary appears on the appeal in the present suit. We do not, therefore, regard O'Connor v. Rhodes, supra [65 App.D.C. 21, 79 F.2d 146], as establishing the law in this case or, in view of the circumstances, as controlling."

■ In the facts properly found by the District Court in the trial on the merits it is obvious the suit is one against the United States and, that being true, the correct rule to apply is that stated by us in Haskins Bros. & Co. v. Morgenthau, 66 App.D.C. 178, 85 F.2d 677, 681, as follows:

"In the instant case it is therefore of no consequence whether the act under which the tax was collected be constitutional or unconstitutional. The fact that the tax has been collected and deposited in the treasury by the collecting officials of the government renders the custodian of the fund impotent to withdraw the money and disburse it unless and until directed to do so by act of Congress, or until the United States shall submit to be sued to determine its disposition."

The fact that the fund in the Haskins Bros. case was derived from the imposition of a tax, while here it was from the imposition by Act of Congress of a condition to the sale of cotton produced in excess of allotment, is of no consequence. The controlling principle is based upon the presence of the fund at the time of suit in the Treasury. The fact, found by the District Court, that "there is no congressional authority for withdrawal of money from the Treasury under the pool appropriation account for payment to plaintiffs and intervenors," leaves the courts without power to interfere.

■ What has been said would dispose of the case except for the prayer in the bill of intervention for judgment against defendants individually. An examination of the record shows that none of defendants dealt with any of the intervenors personally. The Secretary of Agriculture had set up machinery for the deposit on the one hand of unused allotment certificates, and on the other hand for their sale to excess producers of cotton. Deal was called the Certificate Pool Manager; but the checks in purchase of certificates passed, by rules and regulations established by the Secretary, into the hands of the clerical branch of the organization and thence by a prescribed route through Deal into the hands of Treasury officers of the Government, and the proceeds of the checks were payable to and were paid into the Treasury, and any interference with that routine would have subjected the person concerned to criminal prosecution. Purchase of extra allotment certificates was in every instance without protest or notice that claim on account thereof would be made. As a result, nothing appeared to put any one on notice of claim until the money got into the hands of the Treasurer or into the Treasury. It was then too late. Obviously, from the time of purchase the funds received therefor could be handled only in accordance with regulations set up to carry out the pool transactions. Whatever action was taken by any individual

officer in relation to such funds was an act required and implied in the functions and duties incident to his office. Accord-ingly, the judgment of the court below is correct and must be and is affirmed.[3]

Affirmed.

[3] In reaching this conclusion, which we think is required by the facts to which we have referred, we are not unmindful of the hardship thus imposed on intervenors and others of their class. The record shows without denial that some hundred thousand or more cotton farmers paid into the Treasury of the United States approximately $22,000,000 under an unconstitutional Act of Congress and that, after a finding of unconstitutionality and a demand for return of the money, the Government denied return and continued to distribute it to other farmers who, in view of the invalidity of the law, had no legal claim to it. The only claimed justification for this action is that it would be contrary to equity and good conscience to repay the money to the purchasers of pool certificates so long as such persons retained the general benefits under the cotton production program. Sufficient answer to this is that the Government recognized and paid the claims of other cotton producers—in precisely the same category as those here—but who paid *the tax* in lieu of the purchase of *certificates*. We are wholly unable to perceive any difference in the equities between the two classes.